IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Glenn F. McConnell, in his official capacity as President *Pro Tempore* of the South Carolina Senate<br>1100 Gervais Street<br>Columbia, SC 29201-6215<br>    Plaintiff,<br><br>vs.<br><br>The United States of America<br>U.S. Attorney For the District of Columbia<br>Civil Division<br>4th Floor<br>501 Third Street, N.W.<br>Washington, D.C. 20530<br><br>Eric H. Holder, Jr., in his official capacity as Attorney General of the United States<br>Office of General Counsel<br>Justice Management Division<br>Department of Justice<br>145 N. Street, N.E.<br>Washington, D.C. 20530<br>    Defendants. | Civil Action No.: |

**COMPLAINT FOR DECLARATORY JUDGMENT
PURSUANT TO THE PROVISIONS OF SECTION 5 OF THE
VOTING RIGHTS ACT OF 1965, AS AMENDED, 42 U.S.C. § 1973c,
AND REQUEST FOR THREE-JUDGE COURT**

Plaintiff Glenn F. McConnell, in his official capacity as President *Pro Tempore* of the South Carolina Senate, brings this action for declaratory judgment pursuant to Section 5 of the Voting Rights Act of 1965, as amended, 42 U.S.C. § 1973c, (hereinafter "Section 5"), and 28 U.S.C. § 2201, *et seq.* Plaintiff respectfully would show the Court the following:

1. This action is filed for the purpose of obtaining a declaratory judgment that the Senate redistricting plan contained in Section 2, Part II of S. 815, Act 71 of 2011 ("S. 815," "Act 71," or the "Senate Plan"), an act ratified by the South Carolina General Assembly on June 22, 2011, and signed into law by the Governor of South Carolina on June 28, 2011, satisfies Section 5 of the Voting Rights Act because it has neither the purpose nor the effect of denying or abridging the right to vote on account of race or color, or of diminishing minority voters' ability to elect their preferred candidates of choice, and that S. 815 may be enforced by the State of South Carolina. S. 815, which will take effect in the regularly scheduled 2012 primary and general elections, provides for the decennial redistricting of South Carolina's forty-six State Senate districts.

## Parties

2. Plaintiff McConnell is the person expressly authorized and directed by Section 4 of S. 815 to seek judicial or administrative approval of S. 815 as required by Section 5.

3. The United States is a proper defendant in this action because "[a] State or political subdivision [covered by Section 5] wishing to make use of a recent amendment to its voting law . . . has a concrete and immediate 'controversy' with the Federal Government." *South Carolina v. Katzenbach*, 383 U.S. 301, 335 (1966).

4. Eric H. Holder, Jr. is a proper defendant in his official capacity as the Attorney General of the United States and is principally responsible for enforcing the Voting Rights Act of 1965, including the defense of Section 5 litigation in the United States District Court for the District of Columbia. 42 U.S.C § 1973c(a).

### Jurisdiction and Venue

5. This action is brought pursuant to 42 U.S.C. § 1973c and 28 U.S.C. § 2201, under which this Court is authorized to issue the declaratory judgment Plaintiff seeks. This Court has subject matter jurisdiction pursuant to 42 U.S.C. § 1973c and 28 U.S.C. § 1331.

6. Venue is proper in this Court pursuant to Section 5, 42 U.S.C. § 1973c, and 28 U.S.C. § 2284.

### Three-Judge Panel Required and Requested

7. Because the State of South Carolina is a covered jurisdiction under the Voting Rights Act of 1965, *see* 28 C.F.R. pt. 51, app., changes to the districts from which members of the South Carolina State Senate are elected are subject to Section 5. Section 5 provides that no voting qualification or prerequisite to voting, or standard, practice, or procedure with respect to voting different from that in force or effect on November 1, 1964 may be enforced unless and until the State (a) obtains a declaratory judgment from this Court that the qualification, prerequisite, standard, or procedure has neither the purpose nor the effect of denying or abridging the right to vote on account of race or color, or in contravention of the guarantees set forth in 42 U.S.C. §1973b(2); or (b) submits the qualification, prerequisite, standard, or procedure to the Attorney General for administrative review and preclearance and an objection is not interposed to the State's enforcement of the qualification, prerequisite, standard, or procedure.

8. This action is properly determinable by a district court of three judges in accordance with 42 U.S.C. § 1973c and 28 U.S.C. § 2284.

### Factual Allegations

9. The South Carolina General Assembly is composed of two bodies: the Senate, which is divided into 46 single-member seats, and the House of Representatives, which is divided into 124 single-member seats. S.C. Const. art. III, §§ 1, 3, 6.

10. Members of the Senate are elected to four-year terms. *Id.* § 6.

11. After the release of the 2010 Census data, the General Assembly was required to revise the Senate districts. *See Reynolds v. Sims*, 377 U.S. 533, 568 (1964); S.C. Const. art. III, § 3.

12. Prior to the General Assembly's consideration of Senate redistricting plans, the Senate Judiciary Committee's bi-partisan Redistricting Subcommittee held ten public hearings in various cities across the state.

13. Acting on the public input, the Subcommittee adopted guidelines consistent with governing law.

14. The Subcommittee then provided an open period during which interested parties could submit plan proposals, and the Subcommittee held additional public hearings on the submitted plans.

15. After considering and debating the merits of the various plans, the General Assembly enacted S. 815, a plan that received overwhelming bi-partisan support from African-American and white members. In particular, it received the support of eight of nine African-American members of the Senate, and it passed the Senate with a unanimous bi-partisan vote of 33-0 on second reading and by a vote of 37-1 on third reading.

16. S. 815 was ratified by the South Carolina General Assembly on June 22, 2011, and signed into law by the Governor of South Carolina, Nikki Randhawa Haley, on June 28, 2011.

17. The last administratively approved redistricting plan in South Carolina ("Benchmark Plan") had nine majority-black voting-age population ("VAP") districts when the plan was enacted in 2003. Because of demographic changes as of 2011, the Benchmark Plan had a total of eight majority-black VAP districts in 2011. S. 815 preserves majority-black VAP status in all eight of the districts and restores majority-black VAP status in the ninth district—District 45.

18. Compared to the Benchmark Plan, S. 815 does not diminish the ability of minority populations to elect their candidates of choice in any of its nine majority-black VAP districts. The small reductions of black VAP percentage in some of these districts were necessitated by demographic changes since the last redistricting.

19. Compared to the Benchmark Plan, S. 815 does not diminish the ability of minority populations to elect their candidates of choice in any of the three minority-black VAP districts with African-American incumbents. The small reductions of black VAP percentage in some of these districts were necessitated by demographic changes since the last redistricting.

20. S. 815 does not lead to retrogression in the position of racial minorities with respect to their effective exercise of the electoral franchise or diminish their ability to elect their preferred candidates of choice, and does not otherwise have the effect of denying or abridging the right to vote on account of race or color.

21. S. 815 does not have the purpose of denying or abridging the right to vote on account of race or color.

22. In addition to complying with the United States Constitution, the South Carolina Constitution, and the Voting Rights Act of 1965, S. 815 adheres to legitimate state redistricting policies.

23. No part of S. 815 can be implemented by Plaintiff until this Court enters a declaratory judgment as requested by Plaintiff, or until it is administratively precleared by the United States Department of Justice.

24. A voting change is administratively precleared once a covered jurisdiction has filed a complete submission with the Attorney General and received no objection within sixty days. *Morris v. Gressette*, 432 U.S. 491, 502 (1977); 42 U.S.C. § 1973c(a).

25. Plaintiff filed a submission for administrative preclearance (hereinafter "Submission") for S. 815 with the Department of Justice on July 27, 2011. *See* Exhibit A.

26. The Attorney General did not object to S. 815 within sixty days of Plaintiff's filing of a complete submission.

27. The statutory sixty-day review period cannot be evaded through a last-minute request for information that already has been provided or is not required for a completed submission. The only exception to the sixty-day time limit is when additional information is necessary because a submitting authority has not provided "a submission satisfying the enumerated requirements" set forth in the preclearance regulations. *Georgia v. United States*, 411 U.S. 526, 539 (1973); *see also Branch v. Smith*, 538 U.S. 254, 263 (2003).

28. At 9:17 p.m. on September 26—less than three hours before the sixty-day period was set to expire, the Department of Justice submitted a "request for further information," *see* Exhibit B, requesting only information and explanations that were already provided long ago to the Department, or were not required under the Section 5 regulations.

29.     On September 29, Plaintiff responded to the Department of Justice's letter. *See* Exhibit C. Plaintiff demonstrated that the July 27 Submission fully complied with Section 5 regulations and, thus, that the last-minute "request for further information" did not extend the statutory sixty-day deadline. Plaintiff asserted that the absence of an objection rendered S. 815 precleared. Plaintiff requested the Justice Department's prompt acknowledgment that S. 815 is enforceable due to the lack of an objection during the statutory review period and, alternatively, due to the fact that S. 815 does not have the purpose nor will have the effect of denying or abridging the right to vote on account of race or color. As of the filing of this Complaint, the Department of Justice has not responded.

### Justiciability

30.     A threshold issue this Court must decide is whether Plaintiff's declaratory judgment action still concerns a live controversy or whether the Attorney General's failure to object within sixty days renders it moot, since administrative preclearance has already been obtained. If the sixty-day statutory time limit was triggered by Plaintiff's full and comprehensive submission on July 27, and not somehow extended by the pretextual, gratuitous September 26 "request for further information," then S. 815 has been administratively precleared due to the Attorney General's failure to issue a timely objection. The Court needs to resolve this issue, which imposes a cloud of uncertainty over the State's ability to administer and implement S. 815, to resolve whether it has jurisdiction to decide this declaratory judgment action.

31.     Assuming this suit is not moot, S. 815 is ripe for a determination that the Senate Plan has neither the purpose nor the effect of denying or abridging the right to vote on account of race or color, and does not lead to a retrogression in the position of racial minorities or diminish their ability to elect their preferred candidates of choice on account of race. It is important that

the Court act upon Plaintiff's claims at the earliest practicable date. The next election for the State Senate will occur on November 6, 2012. The candidate filing period for the 2012 election will open on March 16, 2012, and close on March 30, 2012. The state primary elections will be held on June 12, 2012. Therefore, in order to preserve the existing election calendar, it is necessary that this Court consider and decide this controversy prior to the opening of the candidate filing period.

### Count I

32. Each and every allegation contained in paragraphs one through thirty-one is reaffirmed and realleged as if fully incorporated herein.

33. S. 815 does not have the purpose nor will have the effect of denying or abridging the right to vote on account of race or color.

34. Plaintiff is entitled to a judgment that S. 815 fully complies with Section 5 of the Voting Rights Act of 1965, as amended, and that S. 815 may be implemented without further delay.

WHEREFORE, Plaintiff respectfully requests that this Court:

(a) Convene a three-judge district court to hear the matters raised in Plaintiff's Complaint;

(b) Issue such orders and convene such conferences as may be necessary on an expedited basis to ensure that what little discovery may be necessary in this action be taken and completed as expeditiously as possible;

(c) Enter such other and further orders as may be necessary during the pendency of this case to ensure that it is handled as expeditiously as possible;

(d) Enter a declaratory judgment that S. 815 satisfies Section 5 of the Voting Rights Act because it has neither the purpose nor the effect of denying or abridging the right to vote on account of race or color, or of diminishing minority voters' ability to elect their preferred candidates of choice, and that S. 815 may be enforced by the State of South Carolina; and

(e) Grant Plaintiff such other and further relief as may be appropriate, including the costs of this action.

Respectfully submitted,

JONES DAY

*/s/ Michael Carvin*

Michael A. Carvin
D.C. Bar No. 366784
macarvin@jonesday.com
Louis K. Fisher
D.C. Bar No. 475502
lkfisher@jonesday.com
51 Louisiana Avenue, NW
Washington, DC 20001
(202) 879-7643